Shotwell *v.* Taliaferro et al.

---

ROBERT SHOTWELL *vs.* L. B. TALIAFERRO et al.

It is only in his own court of the district to which the law has assigned him, that a chancellor or vice-chancellor can cause a selection of a special chancellor to be made under the statute to try a case in the decision of which the chancellor is incompetent to sit.

In such a case every thing is to be done in the name of the regular chancellor of the court.

It is a sufficient answer to the demurrer to the bill, that all the persons who appear to have an interest in the property, are made parties to the suit.

The fact that T. might have a remedy against the other defendants in the judgment, upon payment of the bond, does not make them necessary parties in the proceeding to ascertain who is the owner of the property.

The other parties to the judgment cannot be prejudiced by the decree.

This court will not take cognizance of a case in which there is not a final decree rendered in the court below.

ON appeal from the northern district chancery court at Columbus; Hon. Henry Dickinson, vice-chancellor.

This was a suit instituted by bill in the district chancery

court, and it charges, that on the 9th day of July, 1839, complainant became the assignee of the Tombigbee Railroad Company of a judgment rendered in their favor against Henry Bell et al. and Lewis B. Taliaferro, on a forthcoming bond forfeited on the 4th day of March, 1839, for $4,207.59; and that the same is unpaid.

It further states, that one Covington and Calhoun sold a valuable tavern property in the town of Columbus, to Bell and Conner, for the sum of $18,000, on a credit, took their notes, and gave bond to make title 8th of April, 1839. That there were divers transfers of the title bond until the same became the property of the said Lewis B. Taliaferro; that all the consideration-money was paid except the two last mentioned notes, on which about the sum of $4,000 was due, and which had been transferred to one J. B. Cozens by Calhoun; that Taliaferro was in the possession of the property, and assignee of said title bond; that by taking up the two notes in possession of Cozens he would be entitled to a deed for said property; that said Taliaferro did lift the said outstanding notes, but being involved in debt and in failing circumstances, and with a view to defraud his creditors, and particularly to avoid the lien of said judgment, Taliaferro assigned the title bond to his daughter, Mary E. H. Shotwell, (now Mrs. Lawson,) without any consideration, and got the said Covington and Calhoun to execute the deed of conveyance to said property to her; that about the same time the said Taliaferro made a sham sale also to her of a vast amount of negroes and land, which sale has, by the courts of the country, been pronounced null and void for fraud.

The bill further shows, that on the 22d day of January, 1842, the said Mary made a trust deed on said property to one Henry Dickinson, as trustee, to secure a debt due to one Maulden Montague & Co.; said bill charges, that said Dickinson and Maulden Montague & Co., had notice of the fraud between the said Mary and the said Lewis, and that Maulden Montague & Co. have repudiated the said trust; that the property has been sold under executions, all of which were junior to complainant's lien, and the same was purchased by one Symons; that Calhoun's

interest was sold under execution upon a judgment senior to complainant's, but the same had been purchased by one Harvie for Mrs. Shotwell, and in continuation of the fraud. There are ten special interrogatories in the bill. And it prays to set aside the sale from Taliaferro to Mrs. Shotwell for fraud, that the deed from Calhoun and Covington to her be vacated, and that the other sales and trust deed be cancelled, and that said property be sold under the lien of complainant's judgment and for its satisfaction, &c.

Maulden Montague & Co. answered the bill in substance: That it may be true as to the rendition of the judgment and the assignment to complainant. Deny having knowledge of the frauds charged in the bill, if true; state, that Taliaferro was indebted to them in the sum of $4,815.81, with said Mary as surety, by note 11th February, 1841; said Taliaferro notified them that he was unable to pay; that on the 22d of February, 1842, they called on said Mary for payment, when she executed the said trust deed to Dickinson to secure said note; that they are *bonâ fide* purchasers and creditors without notice of the fraud charged; deny that they have disclaimed their rights under the trust deed, but have been active in their efforts to realize their debt, but have been prevented from doing so by the interminable litigation in which said property is involved. They say, that if Taliaferro paid the purchase-money and had the title made to his daughter, they are ignorant of the same. They pray to be dismissed, &c.

Mrs. Lawson demurred to the bill, 1st, because all of the defendants to the judgment at law were not made defendants to the bill of complainant; 2d, because at the time of filing the bill there was an execution at law to be executed; 3d, because it is not shown by said bill, that complainant has not an adequate remedy at law for the satisfaction of said judgment; 4th, because there has been no return of *nulla bona;* and, 5th, because a court of chancery has no jurisdiction of the matters stated in the bill; which demurrer was overruled.

Mrs. Lawson then answered the bill, in substance, that of her own knowledge she knows nothing of said judgment or its transfer to complainant, but is advised that such judgment

exists, and that complainant is the owner; that Bell, one of the defendants, has departed this life, and that neither his representative nor the other defendants to said judgment have been made defendants to this bill, and for that reason demurs to that part of said bill; has long understood that complainant owns some interest in said judgment.   Admits the sale from Covington and Calhoun to Bell and Conner, and that the title bond was transferred to said Taliaferro; but denies that the title ever absolutely vested in said Taliaferro, or that he ever made full payment for it, or that the same has ever been paid.   She states that she contracted with Cozens and Calhoun for a title to said tavern property, and that the said L. B. Taliaferro made his two bills of exchange, one for $2,620.76, dated 20th August, 1840, and the other of same date for $1,220, indorsed by said Harvie and herself, for balance of purchase-money to Cozens; and for said bills of exchange Calhoun and Covington were to execute to her a title to said property, but that she was to hold said property in trust to indemnify Harvie from liability upon his said indorsements.   She states that there have been judgments obtained on them, and that they have been enjoined by Harvie on account of defects of title in said property, which is now before this court.   She admits that her father, Lewis B. Taliaferro, was largely in debt and in failing circumstances, but denies that he ever sold her any property in fraud, or to hinder or delay his creditors, especially that he procured Covington and Calhoun to convey to her said property for any such purpose; admits the sale under execution, and that Harvie purchased to protect himself against said indorsements; she proffers, if complainant will pay the judgments on bills of exchange, and Harvie $950, she will convey to him all her rights in said property; admits that Symons purchased as stated; she demurs to the relief sought, because complainant does not show that he has exhausted his remedies at law; admits the giving of the deed of trust to Dickinson to secure Maulden Montague & Co.; denies all fraud, &c., and prays to be dismissed, &c.

None of the other defendants answered except Lawson, the husband of the said Mary, and *pro confessos* were taken against

L. B. Taliaferro, W. T. Symons, Browning, and Howard, executors of D. Harvie, deceased, and Henry Dickinson, trustee in the trust deed. The case was set down for hearing by defendants, Lawson and wife, when the vice-chancellor refused to try the case, as he was a party defendant to the bill. The State chancellor was called upon to take the place of the vice-chancellor, when he refused to try the case himself, but chose a vice-chancellor by ballot against the protestation of complainants.

J. B. Halbert was thus chosen, who overruled all objections to his competency and all affidavits for continuances, and decided the case upon the demurrer in the answer of Mrs. Lawson, and dismissed the bill, when complainant appealed to this court.

*Christian* and *Carrington*, for appellant.

*Geo. L. Potter*, on the same side.

*W. P.* and *J. F. Jack*, for appellees.

Mr. Justice FISHER delivered the opinion of the court.

The complainant in the court below, as assignee of a judgment recovered by the Tombigbee Railroad and Banking Company, in the circuit court of Lowndes county, on a forfeited forthcoming bond, against Lewis B. Taliaferro and others, filed his bill in the vice-chancery court at Columbus, to subject to the payment of his judgment, certain real estate in the town of Columbus.

The bill, upon final hearing before a special vice-chancellor, selected under the provisions of the statute of 1840, (Hutch. Code, 772,) was dismissed. From which an appeal, by consent of parties, has been prosecuted to this court.

The first question presented by the counsel for the appellant is, that the special vice-chancellor was not selected according to the requirements of the law. It appears that the vice-chancellor, being interested in the matters in controversy, requested the chancellor of the State to preside at the hearing of said cause.

He, upon looking into the cause, discovered that he was also interested, and designated four members of the bar in attendance upon the court, from which number the special vice-chancellor was selected.

This duty could only have been performed by the vice-chancellor, assigned by law to the district. If the chancellor of the State was incompetent, from interest, to preside at the hearing, his duties were at an end. It was only in his own court that he could cause a selection of a special chancellor to be made, to decide a cause pending therein.

The record showing that the special vice-chancellor was thus selected, the final decree is a nullity, and the cause must be treated as one yet undecided.

The statute of 1840 is definite in its language, that the proceedings relative to the selection of a special chancellor in such a case, and his action therein, shall not appear of record. Every thing is to be done in the name of the regular chancellor. This provision of the statute should in every such case be rigidly adhered to, as its observance may relieve this court from passing upon a question now presented, the constitutionality of the law.

As the parties earnestly desire our opinion on the merits of the case, we will notice the important question at issue.

It would have been error in the vice-chancellor to have dismissed the bill, if he had presided at the hearing.

The controversy is mainly between the complainant as a judgment creditor of Lewis B. Taliaferro, and Maulden Montague & Co., who claim under a deed of trust from Mrs. Shotwell, to secure them in the payment of two bills of exchange drawn by Taliaferro, and indorsed by Mrs. Shotwell and one Harvie. The bill is in every respect a creditor's bill, and it may be true that Maulden Montague & Co. have a right to prior satisfaction out of the property, but there is no reason shown why the complainant should not have the surplus.

The bill charges that Covington and Calhoun sold the property in controversy to Bell and Conner for $18,000, and gave bond to make to the purchasers a title on payment of the purchase-money; that this bond was afterwards assigned to Lewis

B. Taliaferro; that one Cozens held the notes for about $4,000, for the last instalments of the purchase-money; and that Taliaferro, to defraud his creditors, paid off said notes and procured the title to the property to be made to his daughter, Mrs. Shotwell.

The facts, as disclosed by her answer and other parts of the record, are these: that her father, Taliaferro, took up the notes held by Cozens, by giving him two bills of exchange indorsed by Mrs. Shotwell and one Harvie, on Maulden Montague & Co.; that in consideration of her indorsement, and that of Harvie, the title to the property was to be made to her; and that she, in 1842, executed a deed of trust to Henry Dickinson, for the purpose of securing Maulden Montague & Co., who had accepted the bills. The bill also charges that the *cestuis que trust* in this deed, had notice of the fraudulent purpose for which the deed was made to Mrs. Shotwell. This allegation is in the fullest manner denied by the answer.

Mrs. Shotwell does not controvert the complainant's right to have the property subjected to the payment of his judgment, after these bills shall have been paid.

There is nothing in the record establishing fraud either against Maulden Montague & Co. or Mrs. Shotwell. She also contends that Harvie shall be paid about $900, for money which he paid for this property when purchased by him at execution sale. Upon this point we give no opinion, as the fact is too vague in the record before us, to determine his right in this respect. It appears, however, that the claim of Harvie thus set up, should have been adjusted in the payment of the notes by Calhoun, transferred to Cozens. But we leave the question open for fuller explanation in the court below.

It will thus be seen, that the only claim which Maulden Montague & Co. can assert against the complainant is, that they are entitled to prior satisfaction. If Mrs. Shotwell and Harvie, as indorsers, pay the debts to this firm, they can only ask to be reimbursed, by virtue of their legal title, out of the property; and if, on the contrary, the complainant can show that they were connected with Taliaferro in having this arrange-

ment made to defraud, hinder, or delay his creditors, their claim will have to yield to that of complainant.

Again, if it can be shown that the bills have been paid by Taliaferro, the drawer, the complainant's remedy against the property will be complete and superior to the deed of trust.

As to the demurrer of Mrs. Shotwell to the bill, because all the defendants in the judgment are not before the court, it is a sufficient answer to state, that all who appear to have an interest in the property are made parties. This is sufficient, as the other parties to the judgment cannot be prejudiced by the decree. It is true that Taliaferro, being only a surety on the forthcoming bond, might, upon payment of the judgment, have his action against the other defendants. But the fact that he would have a remedy against them, does not make them necessary parties in a proceeding to ascertain whether he is in truth the owner of the property in controversy.

As there was no final decree in the court below, which we can notice, and as the record shows that the cause is still undecided, we dismiss the appeal for want of jurisdiction.